UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

MARIA MORGAN,

                             Plaintiff,

                  -against-

WAL-MART STORES EAST, LP,

                             Defendant.

----------------------------------------------------------------x

**OPINION AND ORDER**

20-cv-9246 (AEK)

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.[1]**

Plaintiff Maria Morgan brings this action against Defendant Wal-Mart Stores East, LP ("Wal-Mart"), seeking to recover for personal injuries she allegedly suffered while shopping in a Wal-Mart store located in Mohegan Lake, New York.  *See* ECF No. 1-1.  Before the Court is Defendant's motion for summary judgment.  ECF Nos. 37 (Notice of Motion), 38 (Memorandum of Law or "Def.'s Mem.").  For the reasons that follow, Defendant's motion is GRANTED.

## BACKGROUND

### A.    Factual Background

The following facts are undisputed unless otherwise noted and are taken from Defendant's Local Civil Rule 56.1 Statement of Undisputed Material Facts, ECF No. 39 ("Def.'s 56.1 Statement"), Plaintiff's Answer in Opposition and Response to Defendant's Rule 56.1 Statement, ECF No. 43-3 ¶¶ 1-18 ("Pl.'s 56.1 Resp."), Plaintiff's Statement of Material Facts, ECF No. 43-3 ¶¶ 19-21 ("Pl.'s 56.1 Statement"), Defendant's Reply 56.1 Statement, ECF No. 46 ("Def.'s 56.1 Reply"), and the exhibits submitted by the parties.

---

[1] The parties have consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c). ECF No. 34.

On October 24, 2017 at approximately 3:00 p.m., Plaintiff was shopping in a Wal-Mart store located in Mohegan Lake, New York. Def.'s 56.1 Statement ¶ 8; ECF No. 40 ("O'Connor Aff.") Ex. C ("Morgan Dep.") at 39:12-17. Plaintiff visited this particular Wal-Mart store, which was located close to her place of work, on a weekly basis. Def.'s 56.1 Statement ¶ 8; Morgan Dep. at 36:8-23. Upon arriving, Plaintiff first went to the craft section of the store to pick out a few items before stopping at an "end cap"—a shelving structure at the end of an aisle that may be used to display promotional or sales items. Def.'s 56.1 Statement ¶¶ 9-10 & n.1. This particular end cap was located in the "clearance" section of the store. *Id.* ¶ 10. At the end cap, Plaintiff was looking down at something on the bottom shelf, though she testified that she did not recall specifically what she was looking at. *Id.* ¶ 11; Morgan Dep. at 48:4-9. While Plaintiff was bent over looking at the bottom shelf, she felt something hit her in the back of the head and neck. Def.'s 56.1 Statement ¶ 11; Morgan Dep. at 44:2-9, 60:16-25. Plaintiff testified that she did not know whether she ever saw the item that hit her. Def.'s 56.1 Statement ¶ 12; Morgan Dep. at 53:15-20.

Plaintiff testified that she did not know if she touched any items on the end cap prior to the incident. Morgan Dep. at 45:4-11. She further testified that she did not recall looking at any other items on the end cap other than the item she was looking at on the bottom shelf, or observing any items stacked one on top of the other on the end cap. Def.'s 56.1 Statement ¶¶ 15, 16; Morgan Dep. at 48:10-49:2. While Plaintiff testified that she did not remember if there were any customers in the area around her immediately prior to the accident, Morgan Dep. at 49:3-6, she did see one Wal-Mart associate "about five feet away" from where the incident occurred just before she was struck, *id.* at 49:7-50:13; *see* Pl.'s 56.1 Statement ¶ 21. Plaintiff believed this

individual was a Wal-Mart associate because "[i]t look[ed] like she was stocking shelves," though not the shelves on the end cap where the accident occurred.  Morgan Dep. at 49:14-25.

After she was struck by the falling item, Plaintiff was approached by a Wal-Mart associate who asked if she was okay.  *Id.* at 56:18-57:3.  According to Plaintiff, the associate also "said she saw it hit [her], the comforter set."  *Id.* at 57:19-25.  Plaintiff asked to speak to a manager "because something just hurt [her] in their store and [she] knew [she] should tell someone."  *Id.* at 57:7-13.  The Wal-Mart associate then returned with a manager who had paperwork with her.  *Id.* at 59:6-60:10.  Plaintiff told the manager what happened—that she "was bending over and the thing fell and hit [her]"—and signed an incident report.  *Id.* at 60:11-25.  She then went "straight to checkout," purchased the items she had selected prior to the incident, and drove herself back to work.  *Id.* at 62:17-63:7, 66:14-19.  Plaintiff estimated that she spent approximately 40 minutes in the Wal-Mart store that day after the accident occurred.  *Id.* at 63:17-20.

During the course of discovery, Plaintiff requested that Defendant produce any video of the incident that was captured by Defendant's security cameras.  *See* ECF No. 43 ("Rosenrauch Aff.") ¶ 4.  Plaintiff asserts that in response to this request, "Defendant produced video which does not cover the alleged time of the Plaintiff's accident or show the Plaintiff's accident occur." *Id.*; *see also* Rosenrauch Aff. Ex. 3 (video produced by Defendant).  Defendant maintains that "there was never any video of [P]laintiff's accident in the first instance because the accident scene was not under video surveillance."  ECF No. 45 ("Def.'s Reply") at 2.  Defendant submitted to the Court a form titled "Video Request Form: Customer Incident."[2]  ECF No. 45-1.

_____

[2] Defendant submitted three exhibits as attachments to its reply brief, *see* ECF Nos. 45-1, 45-2, 45-3, without any affidavit or declaration attesting to their authenticity.  *See* Local Civ. R. 7.1(a)(3), (b) (requiring that "any factual information and portions of the record necessary for the

Part I of the form, which indicates that it is to be completed by the "Manager Requesting Video," references an incident that took place on October 24, 2017 at 3:45 p.m.; the "type of incident" is described as a customer having been "hit by a comforter"; and the "Date VRF Submitted" field notes that the video request was made on October 24, 2017.  *Id.*  A handwritten notation in the section of the document labeled "Part II – To Be Completed by Manager / Asset Protection Associate Reviewing Video" indicates that there was "no available shot of the accident."  *Id.*

Plaintiff deposed Jennifer Tomlins, a Wal-Mart employee with more than 13 years of experience with the company, who began working at the Mohegan Lake Wal-Mart store in September 2017.  *See* O'Connor Aff. Ex. D ("Tomlins Dep.") at 6:22-7:3.  Ms. Tomlins testified generally about Wal-Mart's policies and procedures surrounding stocking end caps.  *See id.* at 12:11-17:14.  She did not recall whether she was at the Mohegan Lake store on the date and at the time of the incident.[3]  *Id.* at 17:15-22.  At the time of her deposition, Ms. Tomlins held the position of "Stocking 1 Coach," a role that Ms. Tomlins described as overseeing the "Stocking 1 Team."  *Id.* at 6:17-7:10.  Ms. Tomlins summarized the job of the Stocking 1 Team as follows:

---

decision of [a] motion" be submitted via "supporting affidavits and exhibits thereto").  "There is no provision for filing freestanding exhibits unmoored to an affidavit or declaration made on personal knowledge."  *G.C.W. ex rel. Rivera v. United States*, No. 15-cv-294 (KHP), 2017 WL 933098, at *5 n.10 (S.D.N.Y. Mar. 8, 2017) (quotation marks omitted).  Despite Defendant's failure to follow the Local Rules, and because consideration of the exhibits does not affect the result reached here, the Court has considered Defendant's exhibits to the extent the Court considers them relevant and identifiable.  *McLennon v. New York City*, No. 13-cv-128 (KAM) (SMG), 2015 WL 1475819, at *4 (E.D.N.Y. Mar. 31, 2015); *see also Spears v. City of New York*, No. 10-cv-3461 (JG), 2012 WL 4793541, at *1 n.2 (E.D.N.Y. Oct. 9, 2012).

[3] Although Defendant provided Plaintiff with the names and contact information of two former Wal-Mart employees who were present on the day of the incident and may have witnessed the events at issue, *see* Def.'s Reply at 3; ECF No. 45-2 (response to Plaintiff's post-deposition demands) ¶ 1, Plaintiff chose not to depose either individual, *see* Def.'s Reply at 3.  One of these witnesses, Ana Echevarria, is also listed as the Manager who completed the Video Request Form.  *See* ECF Nos. 45-1, 45-2.

> The items that are on the top shelves on the sales floor that are overstock, they scan those, and if the item beeps, they work it down to the side counter for the customers to purchase, and the features to the home are items that are on end caps or stack bases throughout the entire store; they scan those and fill the home side counter.

*Id.* at 8:5-15. Ms. Tomlins explained that pursuant to Wal-Mart policy, "only consumable items go on clearance end caps. The rest of the store, which is considered the general merchandise, goes down a clearance aisle. And so typically, the general merchandise is what has the heavier or larger items. So it wouldn't be going on an end cap." *Id.* at 13:16-14:3. Ms. Tomlins also testified that "[i]f you're putting the comforter sets on an end cap for clearance, they would be put on a top shelf along with the middle shelf and the bottom shelf," and further that "[i]t wouldn't be odd to [her] if [she] saw comforters on the top of an end cap shelf." *Id.* at 15:25-16:12, 16:19-17:4. In addition, Ms. Tomlins testified that the typical end cap is "six to seven feet tall . . . at its highest point," meaning "the six or seven feet would be the top of the item" placed on the top shelf. *Id.* at 17:5-14.

Plaintiff maintains that as a result of the incident, she has suffered "many diverse injuries including a traumatic brain injury with accompanying memory loss . . . ." Pl.'s 56.1 Statement ¶ 19. In connection with her opposition to Defendant's motion, Plaintiff submitted documents labeled as the "supplemental expert disclosure" (dated June 7, 2022) and the "second supplemental expert disclosure" (dated October 25, 2022) of a medical expert, Dr. Ranga C. Krishna. *See* Rosenrauch Aff. Exs. 1, 2.[4] In the October 25, 2022 disclosure, Dr. Krishna opined, among other things, that:

---

[4] The principal change from the June 7, 2022 disclosure to the October 25, 2022 disclosure appears to be the inclusion of Dr. Krishna's "Addendum Neurological Report of July 29, 2022." *See* Rosenrauch Aff. Ex. 2 ¶ 2. If the additional neurological report was prepared on or about July 29, 2022—more than one month prior to Defendant's filing of the instant motion—it is not clear why Plaintiff waited until October 25, 2022, nearly two months after the motion was filed, to provide the supplemental report.

> [Plaintiff] has Traumatic Brain Injury (TBI) causally related to the accident on
> October 24th, 2017.  The reason for this opinion is as follows: Traumatic Brain
> Injury is defined as the result of the forceful motion of the head or impact causing
> a brief change in mental status (confusion, disorientation or loss of memory) or loss
> of consciousness for less than 30 minutes.

Rosenrauch Aff. Ex. 2 at 14.

### B.    Procedural History

Plaintiff initiated this action by filing a complaint in the Supreme Court of the State of

New York, Orange County on June 16, 2020.  *See* ECF No. 1-1.  On November 4, 2020,

Defendant removed the matter to federal court based on diversity of citizenship between the

parties pursuant to 28 U.S.C. §§ 1332, 1441(b), and 1446.  ECF No. 1.  Defendant filed its

motion for summary judgment on September 7, 2022.  ECF Nos. 37-40.  On November 17, 2022,

Plaintiff submitted her opposition to the motion.  ECF Nos. 43-44.  The motion was fully

submitted on December 6, 2022 when Defendant filed its reply brief.  ECF Nos. 45-46.

## LEGAL STANDARD

### A.    Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be

granted "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 320-23 (1986).  A dispute about a material fact is genuine "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine

issue of material fact exists, a court is required to "constru[e] the evidence in the light most

favorable to the nonmoving party and draw[] all reasonable inferences in its favor."  *Mount*

*Vernon Fire Ins. Co. v. Belize NY, Inc.*, 277 F.3d 232, 236 (2d Cir. 2002); *Farias v. Instructional*

*Sys., Inc.*, 259 F.3d 91, 97 (2d Cir. 2001); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 764

(2d Cir. 1998); *see also Anderson*, 477 U.S. at 261 n.2.  A party cannot overcome summary

judgment by relying on "mere speculation or conjecture as to the true nature of the facts"

because "conclusory allegations or denials" cannot "create" genuine disputes of material fact

"where none would otherwise exist."  *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010)

(quotation marks omitted).  "Only when no reasonable trier of fact could find in favor of the

nonmoving party should summary judgment be granted."  *Cruden v. Bank of N.Y.*, 957 F.2d 961,

975 (2d Cir. 1992) (citing *H.L. Hayden Co. v. Siemens Med. Sys. Inc.*, 879 F.2d 1005, 1011 (2d

Cir. 1989)).

### B.      Burden of Proof

While New York law governs Plaintiff's substantive personal injury claim,[5] federal law

applies to procedural aspects of the claim.  *Hanna v. Plumer*, 380 U.S. 460, 465 (1965).

"Because the moving party's burden of proof on a summary judgment motion is procedural, it is

therefore governed by federal law."  *Ricci v. Wal-Mart Stores East, LP*, No. 16-cv-6920 (JCM),

2018 WL 4308556, at *4 (S.D.N.Y. Sept. 10, 2018) (collecting cases).  "While in New York

state court the [d]efendant would have to demonstrate it neither created the condition nor had

notice of it, in federal court the [d]efendant, as the moving party, may point to the absence of

evidence that it caused or had notice of the hazard, and thereby shift the burden to the [p]laintiff

to create an issue for trial through specific factual assertions."  *Rodriguez v. Wal-Mart Stores

East, LP*, No. 16-cv-2603 (CS), 2017 WL 4045745, at *3 (S.D.N.Y. Sept. 11, 2017); *accord

Vasquez v. United States*, No. 14-cv-1510 (DF), 2016 WL 315879, at *4 (S.D.N.Y. Jan. 15,

2016) (quoting *Levine v. Amverserve Ass'n, Inc.*, 938 N.Y.S.2d 593, 593 (2d Dep't 2012)).  Put

---

[5] Because jurisdiction over this matter is based upon the parties' diversity of citizenship
and the alleged acts occurred in New York, New York law governs the substantive claims.  *Moy
v. Target Corp.*, 629 F. Supp. 3d 205, 209 n.6 (S.D.N.Y. 2022).

another way, the moving party "need not make any affirmative *prima facie* showing on [a]

motion for summary judgment, and may discharge its burden of proof merely by pointing to an

absence of evidence to support an essential element of [plaintiff's] claim." *Vasquez*, 2016 WL

315879, at *5 (quotation marks omitted). If a defendant sustains that burden, the burden then

shifts to the plaintiff to present evidence and demonstrate that a genuine issue of material fact

exists for trial. *Celotex*, 477 U.S. at 322-24.

## DISCUSSION

### A.    Premises Liability

Plaintiff asserts that Defendant's negligence caused her to sustain injuries on October 24,

2017 at the Mohegan Lake Wal-Mart store. "To establish a *prima facie* case of negligence under

New York law, 'a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff,

(2) a breach thereof, and (3) injury proximately resulting therefrom.'" *Lerner v. Fleet Bank,*

*N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (quoting *Solomon ex rel. Solomon v. City of New York*,

489 N.E.2d 1294, 1294-95 (N.Y. 1985)). In the context of premises liability, "the plaintiff must

show that there was a dangerous or defective condition that caused the accident, and that the

defendant either created the defective condition, or had actual or constructive notice thereof."

*Moy*, 629 F. Supp. 3d at 209-10 (cleaned up). Under New York law, Plaintiff bears the burden

of proof on the elements of her premises liability claim. *See Tenay v. Culinary Teachers Ass'n*

*of Hyde Park*, 281 F. App'x 11, 13 (2d Cir. 2008) (summary order).

Defendant argues, and Plaintiff does not contest, that there is no evidence to show that

Defendant had either actual or constructive notice of a dangerous condition. *See* Def.'s Mem. at

6-10; *see also* ECF No. 44 ("Pl.'s Mem.") at 5 (arguing that "plaintiffs are not required to

establish notice where the dangerous condition was allegedly created by the defendant or the

defendant's agent").[6]  Accordingly, the only issue in dispute—and the only potential basis for liability—is whether Defendant created the dangerous condition that allegedly injured Plaintiff.

**B.**      **Creation of a Dangerous Condition**

"To establish that a defendant created a dangerous condition or defect, a plaintiff must point to 'some affirmative act' on the part of the defendant."  *Vasquez*, 2016 WL 315879, at *7 (quoting *Feder v. Target Stores*, 15 F. Supp. 3d 253, 256 (E.D.N.Y. 2014)); *accord Burden*, 2018 WL 4680025, at *4.  "Circumstantial evidence on this point may be sufficient to defeat a motion for summary judgment, if it supports the inference that the defendant created the danger through its own affirmative acts."  *Burden*, 2018 WL 4680025, at *4 (quotation marks omitted). A plaintiff cannot, however, "avoid summary judgment through mere speculation and conjecture regarding how a defendant may have created a particular hazard."  *Decker v. Middletown Walmart Supercenter Store*, No. 15-cv-2886 (JCM), 2017 WL 568761, at *5 (S.D.N.Y. Feb. 10, 2017) (quotation marks omitted); *see also Feder*, 15 F. Supp. 3d at 256 ("Though a plaintiff cannot avoid summary judgment on this issue through mere speculation and conjecture, circumstantial evidence may be sufficient if it supports an inference of causation or negligence.").

Plaintiff has not adduced sufficient evidence to support the inference that Defendant created a dangerous condition through its own affirmative acts.  Essentially, Plaintiff rests her entire argument for liability on her observation that an employee was stocking shelves nearby at

---

[6] Although Plaintiff asserted in her Bill of Particulars that Defendant had actual and constructive notice of a dangerous condition, *see* O'Connor Aff. Ex. B ¶¶ 7-8, Plaintiff now argues only that Defendant created the condition, *see* Pl.'s Mem. at 3-6.  "Thus, to the extent Plaintiff[] had any arguments relating to actual or constructive notice, those arguments have been waived."  *Burden v. Wal-Mart Stores East, LP*, No. 17-cv-1289 (KMK), 2018 WL 4680025, at *4 n.5 (S.D.N.Y. Sept. 28, 2018) (citing *Palmieri v. Lynch*, 392 F.3d 73, 87 (2d Cir. 2004)).

the time of the incident.  *See* Pl.'s Mem. at 1, 3, 6.  Plaintiff did not report seeing this employee

carrying or handling the type of item that fell on her, or conducting any stocking activities at the

end cap from which the comforter fell.  Though Plaintiff regularly visited the Mohegan Lake

Wal-Mart store, she did not testify about ever having seen Wal-Mart employees stocking end

caps or any other type of shelving unit in an improper or dangerous manner.  More specifically,

Plaintiff testified that she did not recall seeing any items on the end cap in question that appeared

to have been shelved in an improper or dangerous manner.  Morgan Dep. at 48:10-49:2, 53:15-

20; *see Burden*, 2018 WL 4680025, at *5.  The presence of a Wal-Mart employee in the vicinity

of the accident, without more, is not sufficient for a jury to find that this employee, or any other

Wal-Mart agent, actually created the allegedly dangerous condition by placing the comforter at

issue in a position in which it was likely to fall.

      Plaintiff also argues that stocking the comforter on an end cap was contrary to

Defendant's own store policy, and thereby supports an inference that Defendant created a

hazardous condition.  Pl.'s Mem. at 3.  She contends that "heavy objects were not supposed to be

placed on the end[ ]caps; and that the heavy comforter sets were . . . placed on the top shelf of

the clearance end[ ]cap."  *Id.*; *see also id.* at 6.  But Plaintiff misstates the evidence.  In fact,

although Ms. Tomlins testified that "heavier or larger items" should not be placed on end caps,

*see* Tomlins Dep. at 13:24-14:3 ("And so typically, the general merchandise is what has the

heavier or larger items.  So it wouldn't be going on an end cap."), she never described a

comforter set as either "heavy" or "large," nor did she ever state that comforters could not be

stocked on end caps.  To the contrary, Ms. Tomlins testified that "[i]t wouldn't be odd to me if I

saw comforters on the top of an end cap shelf."  *Id.* at 16:19-17:2; *see also id.* at 15:25-16:12 ("If

you're putting the comforter sets on an end cap for clearance, they would be put on a top shelf

along with the middle shelf and the bottom shelf because that's what the end cap would contain.").  Moreover, Plaintiff has not put forth any evidence establishing that the comforter that struck her was heavy.  Plaintiff testified that she had no way of knowing how much the comforter weighed—she never picked up the comforter set to assess its weight.  *See* Morgan Dep. at 44:17-45:3.  Ms. Tomlins likewise testified that she did not know how much comforter sets weigh.  Tomlins Dep. at 15:14-23.  Though Plaintiff's counsel repeatedly refers to the "heavy comforter" in the opposition to Defendant's motion, that characterization of the comforter is not attributed to any witness or any other item of evidence in the record.  *See* Pl.'s Mem. at 3, 6.

The lack of evidence put forward by Plaintiff here makes this case distinguishable from those cases where a premises owner was found to have created a dangerous condition based on circumstantial evidence.  For example, in *Carlucci v. Wal-Mart Stores East, LP*, No. 12-cv-1432 (PED), 2014 WL 12543820 (S.D.N.Y. Mar. 10, 2014)—another case involving merchandise allegedly falling from a shelving unit at a Wal-Mart store—multiple current and former Wal-Mart employees, including the first employee to respond to the scene of the accident, testified as to the dangerous nature of the shelving units at issue.  *Id.* at *1-2; *see also id.* at *3 (concluding that a reasonable jury could find that Wal-Mart failed to take appropriate action to secure the merchandise).  Meanwhile, in *Olsen v. K Mart Corp.*, No. 04-cv-3648 (JMA), 2005 WL 2989546 (E.D.N.Y. Nov. 8, 2005), testimony confirmed that an employee was stocking Spaghetti-O's in the aisle at issue on the morning of the incident, and the court concluded that a jury reasonably could infer that the employee "overlooked" the "sixteen pound case of Spaghetti-O's" left on the floor that was the cause of plaintiff's fall.  *Id.* at *6-9.

In contrast, it is just as likely that here, where the comforter was situated on a shelf that was generally accessible to Wal-Mart shoppers, another customer or Plaintiff herself could have caused the comforter set to fall.  Plaintiff has presented no evidence to rule out those possibilities.  *See Yates v. Costco Wholesale Corp.*, No. 19-cv-4023 (ENV) (RLM), 2021 WL 9409159, at *6 (E.D.N.Y. June 30, 2021) ("In cases against retailers, where the items that injured a plaintiff are generally accessible to shoppers in a defendant's large self-service store, unless a plaintiff can discount the equally likely possibility that she or another customer created the condition, the evidence in the record will be insufficient to allow the trier of fact to reasonably infer that defendant was responsible for the allegedly dangerous condition." (cleaned up)); *Tango v. Costco Wholesale Corp.*, No. 19-cv-483 (SJF) (ARL), 2021 WL 174013, at *6 (E.D.N.Y. Jan. 19, 2021) (granting summary judgment to defendant in case brought by customer who was struck by falling "Kraft American Cheese packages" where it was "just as likely that another customer could have caused the cheese packages to fall as it is that the cheese packages fell because they were improperly stacked by the defendant").  Even if Plaintiff's theory that the comforter was improperly shelved on the end cap by a Wal-Mart employee is plausible, "Plaintiff's burden at this stage of the proceedings is not merely to proffer a plausible theory, but to present evidence from which a reasonable jury could draw the inference that Defendant created the hazardous condition."  *Lionel v. Target Corp.*, 44 F. Supp. 3d 315, 319 (E.D.N.Y. 2014).  Plaintiff has failed to do so here.  *See Burden*, 2018 WL 4680025, at *6; *Janetos v. Home Depot U.S.A., Inc*., No. 09-cv-1025 (AKT), 2012 WL 4049839, at *10 (E.D.N.Y. Sept. 13, 2012).

## C.    The *Noseworthy* Rule

Plaintiff argues that the circumstantial evidence she has offered should be afforded greater weight by application of the *Noseworthy* rule, established under New York law in

*Noseworthy v. City of New York*, 298 N.Y. 76 (1948). *See* Pl.'s Mem. at 3-4, 5-6. The Court disagrees.

Pursuant to *Noseworthy*, "an amnesiac plaintiff may be held to relaxed standards of evidentiary proof on summary judgment" where he or she "'present[s] expert evidence establishing, by clear and convincing evidence, his [or her] memory loss and its causal relationship to the defendant['s] conduct.'" *Gervacio v. Zall*, No. 05-cv-3224 (DAB), 2008 WL 11444190, at *3 (S.D.N.Y. July 8, 2008) (quoting *Luscher v. Arrua*, 801 N.Y.S.2d 379, 381 (2d Dep't 2005)); *see also Shatkin v. McDonnell Douglas Corp.*, 727 F.2d 202, 208 (2d Cir. 1984) (recognizing the "*Noseworthy* rule" in negligence actions governed by New York law). The *Noseworthy* rule permits circumstantial evidence presented by an amnesiac plaintiff to be afforded greater weight than it would be otherwise. *Gervacio*, 2008 WL 11444190, at *3; *see also Saint v. United States*, 483 F. Supp. 2d 267, 278 (E.D.N.Y. 2007) (applying rule where plaintiff "suffers from amnesia caused by the accident"). While "*Noseworthy* does not excuse a plaintiff from making out a *prima facie* case where he [or she] bears the burden of production[,] [ ] it permits a jury greater latitude in drawing inferences favorable to plaintiff." *Wald v. Costco Wholesale Corp.*, No. 03-cv-6308 (JSR), 2005 WL 425864, at *7 (S.D.N.Y. Feb. 22, 2005) (quotation marks omitted); *see also Baterna v. Maimonides Med. Ctr.*, 139 A.D.3d 653, 653 (2d Dep't 2016) ("the *Noseworthy* doctrine did not relieve the plaintiff of her obligation to provide some proof from which negligence can reasonably be inferred"); *Lynn v. Lynn*, 216 A.D.2d 194, 195 (1st Dep't 1995) ("the rule . . . does not, however, shift the burden of proof or eliminate the need for plaintiffs to introduce evidence of a *prima facie* case"). Importantly, the rule applies only when, on account of the plaintiff's memory loss, "the parties are not on equal footing with

respect to knowledge of the facts surrounding the accident." *Baterna*, 139 A.D.3d at 653; *accord*

*Varona v. Brooks Shopping Ctrs. LLC*, 151 A.D.3d 459, 459 (1st Dep't 2017).

Plaintiff cannot defeat summary judgment here by relying on the *Noseworthy* rule.  While

Plaintiff testified generally that she has experienced "memory loss" as a result of the incident,

*see* Morgan Dep. at 85:3-10, 87:11-15, 113:19-114:18, and Dr. Krishna opined generally that

"Traumatic Brain Injury is defined as the result of the forceful motion of the head or impact

causing brief change in mental status (confusion, disorientation or loss of memory)" and that

Plaintiff's clinical findings are consistent with "memory impairment," Rosenrauch Aff. Ex. 2 at

13-14, neither Plaintiff nor Dr. Krishna specifically stated that Plaintiff suffers from any loss of

ability to remember the incident.  Indeed, in her June 9, 2021 deposition testimony—nearly four

years after the accident occurred—Plaintiff clearly recalled many salient details about the

moments immediately preceding and following the incident, including the presence of a Wal-

Mart employee and what that employee said to her.  *See* Morgan Dep. at 49:14-25, 57:19-25.

Plaintiff's ability to recall this critical time period sets this case apart from others where the

*Noseworthy* rule has been applied or considered.  *See, e.g.*, *Saint*, 483 F. Supp. 2d at 278

(applying *Noseworthy* where, at time of trial, the plaintiff "continue[d] to be unable to describe

events before and after his motor vehicle accident"); *Lynn*, 216 A.D.2d at 194 (plaintiff was

"unable to testify at deposition as to what happened, how it happened, or what caused it to

happen . . . [t]he last thing she remembered was taking 'a couple of steps' down the stairs and

then waking up in the hospital").

But even assuming that Plaintiff could show by clear and convincing evidence that she is

suffering from memory loss as a result of the incident, this is not a situation in which Defendant

has greater knowledge than Plaintiff of the facts surrounding the accident.  Other than Plaintiff,

the only witness to the incident that has been identified is a former employee of Defendant who was not deposed and who is no longer within Defendant's control, *see* Def.'s Reply at 3; ECF No. 45-2 ¶ 1, and the incident was not captured on video, *see* Rosenrauch Aff. ¶ 4; ECF Nos. 45-1, 45-2.  "Since [P]laintiff and [D]efendant are similarly situated insofar as accessibility to the facts of the [accident] is concerned, the *Noseworthy* doctrine has no application."  *Lynn*, 216 A.D.2d at 195 (cleaned up); *cf. Noseworthy*, 298 N.Y. at 80-81 ("where the management and control of the thing which has produced the injury is exclusively vested in the defendant, it is within his power to produce evidence of the actual cause that produced the accident, which the plaintiff is unable to present").  In sum, the *Noseworthy* rule does not apply in this case.

Moreover, even if the *Noseworthy* rule did apply, it does not relieve Plaintiff of her burden to present "some proof from which negligence can reasonably be inferred."  *Baterna*, 139 A.D.3d at 653.  As discussed, Plaintiff has failed to come forward with circumstantial evidence through which a reasonable jury could infer that Defendant created a dangerous condition that led to Plaintiff's injury.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (ECF No. 37) is GRANTED.  The Clerk of Court is respectfully directed to terminate the pending motion, enter judgment for Defendant, and close the case.

Dated: September 14, 2023
       White Plains, New York

                                        **SO ORDERED.**

                                        _____
                                        ANDREW E. KRAUSE
                                        United States Magistrate Judge